**ALCORN COUNTY, MISSISSIPPI, Plaintiff-Appellant,**

v.

**U.S. INTERSTATE SUPPLIES, INC., et al., Defendants-Appellees.**

No. 83–4015.

United States Court of Appeals, Fifth Circuit.

May 10, 1984.

Smith, Downs, Ross, Trapp & Coleman, Orma R. Smith, Jr., Corinth, Miss., for plaintiff-appellant.

Ralph E. Pogue, Aberdeen, Miss., for U.S. Interstate, Rado and Creditor.

Before CLARK, Chief Judge, GARZA and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This action arises from illegal purchases of office supplies by a county official. Alcorn County sued to recover all amounts paid by it in violation of state bidding laws to the defendant USIS. Additionally, the county sought punitive damages under state law and treble damages under 18 U.S.C. § 1964(c), the civil remedy provision of the Racketeer Influenced and Corrupt Organizations Act (RICO). The district court directed a verdict for the county on its claim for restitution under state law. Neither party appeals that judgment. The court, however, further directed verdicts against the county on its punitive damages and RICO claims. The county appeals, arguing that it was entitled to present these claims to the jury. We affirm in part, reverse in part, and remand the case for a new trial on the county's RICO claim.

## I.

During 1979 and 1980, the defendant, U.S. Interstate Supplies, Inc., (USIS), collected more than $46,000 from Alcorn County for office supplies it sold to the county at inflated prices, including seventy-one cartons of toner for use in copying machines and seventy-three thousand ballpoint and felt-tipped pens, the majority of which were never delivered. Local news media personnel, understandably dubious that the county had validly purchased approximately 2.7 pens per each of its twenty-seven thousand inhabitants, dubbed the event "Penscam."

USIS, a California corporation, at the time of "Penscam" was engaged in telephone solicitation sales. Individual defendants Morris Savitz and David Creditor were salesmen [1] for USIS, and Janice Rado was the corporation's sole stockholder, officer and director. USIS began doing business with Alcorn County in 1979 through its salesmen Savitz and Creditor. Janice Rado sent Alcorn County a price list intending this list to represent its bid for Alcorn County's business. No public notice or request for bids was made by Alcorn County in connection with purchases of office supplies during the relevant time period.

Billie Cutchens, a deputy chancery court clerk of Alcorn County, admitted that she ordered the supplies from USIS. She pleaded guilty to embezzlement of public funds and testified for the county at the trial of this suit. Cutchens testified that she received payments of cash and other property, including three television sets and two radios, from Creditor and USIS in return for making the orders and that Creditor told her these "gifts" were intend-

---

1. USIS maintained throughout the trial that Savitz and Creditor were independent contractors who made contracts for the sale of supplies, then sold those contracts for a commission to USIS, which filled the orders. The trial court held, however, that under California law, Savitz and Creditor were employees of USIS, rendering USIS liable for their torts. This holding has not been appealed.

ed for her and not the county. She also testified that pursuant to instructions from Creditor, she falsified invoices and entries into the county's claim docket in order to conceal the purchases from county authorities. Cutchens maintained at trial that Creditor threatened to harm her when she attempted to withdraw from the scheme.

## II.

In March 1981, Alcorn County sued USIS in federal district court, invoking both diversity and federal-question jurisdiction. The complaint alleged that USIS was obligated under Mississippi law to reimburse all payments made in violation of the state's public purchase laws. In addition, the complaint demanded punitive damages based on fraud and conspiracy to embezzle public funds and treble damages based on violations of RICO. The complaint was later amended to name Creditor, Savitz and Rado individual defendants. Savitz and Rado filed bankruptcy petitions prior to trial, and the complaint was dismissed as to them.

The case was tried before a jury in the Northern District of Mississippi in November 1982. After all parties had presented evidence, the district judge made rulings on cross-motions for directed verdicts, which disposed of all issues in the case, and he dismissed the jury without submitting the case to it. The court ruled that Alcorn County was entitled to repayment of all amounts that it paid on invoices for more than $250, because the evidence conclusively demonstrated that those payments were made in violation of the state law requiring competitive bidding. The district judge also found the county entitled to attorney's fees and prejudgment interest.

The district judge directed a verdict against Alcorn County on its claims for punitive and treble damages without a written opinion. From our examination of the record, we gather that the district judge was of the opinion that no basis had been established for the award of punitive damages under state law. With respect to treble damages, the district judge made the following remarks: "Racketeering, as counsel has so ably pointed out to me, contemplates an illegal enterprise, an illegal enterprise, such as a gambling, a prostitution type thing. I'm of the opinion in this case that the proof does not rise to that degree which would justify either a racketeering charge going to the jury or punitive damages."

On November 16, 1982, the district court entered judgment for Alcorn County for repayments and interest totalling more than $50,000. The judgment contained the following paragraph:

"The plaintiff is also entitled to recover attorney's fees, which matter is held in abeyance to be determined on affidavits and counteraffidavits."

On January 3, 1983, Alcorn County filed a notice of appeal from both the judgment denying it recovery on its RICO and punitive damages theories and the denial of its motion for a new trial. Attorney's fees were awarded in a judgment entered on January 28, 1983. The parties submitted briefs and presented oral arguments before this panel in November 1983. At no time did the defendants question the timeliness of Alcorn County's notice of appeal. Following oral argument, we requested that the parties submit additional briefs addressing whether the notice of appeal was filed within the prescribed time limit.[2]

## III.

This appeal involves some complex procedural issues as well as questions of sub-

---

**2.** Alcorn County filed its notice of appeal thirty days after the denial of its Rule 59(e) motion for a new trial. It relied on the fact that it served on the defendants the motion for a new trial on November 29, 1982, believing that this motion tolled the running of the time for appeal until thirty days after its disposition, January 3, 1983, in this case. Fed.R.App.P. 4(a)(4). The motion for a new trial was not filed on time, however, and our cases make it clear that the consideration by the district court of an untimely motion for a new trial does not interrupt the running of the thirty-day period for filing a notice of appeal. *Alvestad v. Monsanto Co.,* 671 F.2d 908, 911 n. 1 (5th Cir.1982); *Gribble v. Harris,* 625 F.2d 1173, 1174–75 (5th Cir.1980).

stantive law. If the notice of appeal in this case was not filed in time, then we must dismiss the appeal without reaching the merits of Alcorn County's claims. The resolution of the timeliness issue, as we will explain in detail, hinges upon whether the judgment entered on November 16, 1982, was a final, therefore appealable, judgment. If the November 16 judgment was final, then Alcorn County's January 3, 1983, notice of appeal was not filed in time. If there was no final judgment in this case until January 28, 1983, then we must consider whether the premature filing of the notice of appeal vested jurisdiction in this court.

If we resolve these procedural issues in Alcorn County's favor, then we must address whether the district court erred in directing verdicts on the civil RICO and punitive damages claims.

## IV.

### A.

The judgment entered on November 16, 1982, assessed liability for attorney's fees against the defendants, but left the amount of the fee award undetermined. We must decide whether this judgment, which on its face leaves an issue in the case undecided, was a final or appealable judgment under 28 U.S.C. § 1291. If so, no timely notice of appeal from that judgment was filed, and we must dismiss this appeal. The standard for determining whether such a judgment is final is set forth in *Holmes v. J. Ray McDermott & Co., Inc.*, 682 F.2d 1143 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). Synthesizing the holdings of prior cases, we derived this rule:

> When attorney's fees are similar to costs ... or collateral to an action ... a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits. When, however, the attorney's fees are an integral part of the merits of the case

and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment.

*Id.* at 1146 (citations omitted). In *Holmes*, we held that a request for attorney's fees in a maritime action for arbitrary and willful failure to pay maintenance and cure was similar to an element of damages and "not uniquely separable from the merits but ... bound hand in hand with them." *Id.* at 1147.

Since *Holmes* was decided, we have applied its finality test to an action on a contract, holding that where attorney's fees were provided for in the contract, an award of such fees was an integral part of the merits of the case and that a judgment assessing liability for, but not the amount of, attorney's fees was not final. *Oxford Production Credit Ass'n v. Duckworth*, 689 F.2d 587 (5th Cir.1982). In reaching our decision, we looked to Mississippi law for guidance because it governed the construction of the contract in that diversity case. *Id.* at 588. Here we have looked to the law governing Alcorn County's claims, both state and federal, but we have found no cases which address the particular question before us. We do find some guidance, however, in the nature of the cause of action created by 18 U.S.C. § 1964(c).

Alcorn County maintains that its request for attorney's fees is an integral part of the merits of this case, pointing to the fact that attorney's fees were a part of the relief requested in its complaint. If the county had failed to request attorney's fees in its complaint, that would suggest that they were not integral to the merits of this case. We do not, however, consider the fact that the claim was in the complaint to be dispositive of this issue.

On consideration of the factors suggested by *Holmes*, we find that Alcorn County's claim for attorney's fees is integral to its cause of action under the civil RICO statute.[3] We are persuaded by the

---

**3.** 18 U.S.C. § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of

fact that, under federal law, the award of attorney's fees is provided for by the very same statute which both creates the plaintiff's cause of action and provides for an award of damages. This case is distinguishable in that respect from *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), in which the Supreme Court held that an award of attorney's fees under 42 U.S.C. § 1988 was not integral to a plaintiff's main cause of action under 42 U.S.C. § 1983.[4] Moreover, the provision for attorney's fees in section 1964(c) was intended by Congress, like the provision for treble damages, to encourage private enforcement of the laws on which RICO is predicated. These provisions provide strong incentives to civil litigants and are integral to the effort of Congress to enlist the aid of civil claimants in deterring racketeering, as defined by 18 U.S.C. § 1961. *See* Tannenbaum and Molo, *State and Local Governments' Use of the Treble Damages Remedy Under Civil RICO: A Means of Redressing the Economic Effects of Unlawful Conduct*, 35 Baylor L.Rev. 1, 4 n. 13 (1983). It is clear to us that attorney's fees are an essential part of the relief that Congress intended to make available

to parties injured by racketeering violations. Rather than making a fee award a matter of the trial court's discretion, as it is under 42 U.S.C. § 1988, Congress made the fee award mandatory to successful civil RICO plaintiffs. There is no opportunity under the civil RICO statute for a successful defendant to recover attorney's fees. This distinction, too, convinces us that the fee award provided in 18 U.S.C. § 1964(c) is *not* like costs, but is an integral part of the relief sought by the civil RICO plaintiff.

Because the request for attorney's fees in this case was integral to the merits of the RICO cause of action, the judgment rendered on November 16, 1982, which did not fix the amount of the fee award, was not final.[5] *Holmes*, 682 F.2d at 1148. The judgment of the district court became final on January 28, 1983, when the order fixing the amount of attorney's fees was entered, and the time for appeal began to run on that date. *Oxford Production Credit Association v. Duckworth*, 689 F.2d at 589.

**B.**

■ The only notice of appeal filed in this case was filed on January 3, 1983, more than three weeks before the judg-

---

this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

**4.** Although we are bound to follow the rule of *Holmes* as the law of this circuit, in so doing we note the difficulties it may create for litigants. Some commentators have suggested a per se approach:

It is best to read [*White v. New Hampshire Dep't of Employment Security*] as establishing a clear rule. A judgment otherwise final is appealable even though the court has not disposed of attorney fee issues, without regard to the time at which attorney fees were requested or the theory underlying the request. The great virtue of this rule is clarity. It will forestall any need to worry whether a judgment that fails to pass upon a demand for fees in the complaint is not final, in the way that judgments that fail to dispose of all requests for relief are not final. It will avoid any period of uncertainty as courts work through questions whether some grounds for recovering fees are less separable from the merits than the ground involved in this case.

15 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 3915 (Supp.1983) 308–09 (footnotes omitted).

The Tenth Circuit (1982) has adopted this approach to finality. In *Cox v. Flood*, it held that "judgments finally disposing of the merits are appealable even though questions relating to attorney's fees have been left undecided." 683 F.2d 330 at 331. The court in so holding apparently assumed that a request for attorney's fees is never a part of the merits of the case, even an action under 15 U.S.C. § 15. The Third Circuit, too, has read the Supreme Court's decision in *White* to create a broad, per se rule of finality: "[O]rders disposing finally of the merits are appealable even though the questions relating to attorney's fees have been left undetermined." *Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628, 644 (3d Cir.1982) (en banc).

**5.** Because of this holding, we need not decide whether the request for attorney's fees was integral to the merits of the state law claims made by the county.

ment of the district court became final. We must decide, then, whether the premature notice of appeal properly invokes the jurisdiction of this court. Despite some recent authority to the contrary,[6] the older precedent in this circuit holds that we may consider a premature appeal in those cases where judgment becomes final prior to disposition of the appeal. *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir.1973). The *Jetco* rule has been recognized and followed in this circuit in a number of cases. *See, e.g., Cole v. Tuttle*, 540 F.2d 206 (5th Cir.1976); *Tower v. Moss*, 625 F.2d 1161, 1164–65 (5th Cir.1980); *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022 (5th Cir.1980); *Martin v. Campbell*, 692 F.2d 112 (11th Cir.1982) (recognizing *Jetco* as the rule of the Former Fifth Circuit, binding on the Eleventh Circuit).

In *Martin v. Campbell*, the Fifth Circuit precedent was summarized:

> In each of these cases the appellant filed his notice of appeal prematurely before all claims had been adjudicated, but the pending claims were later decided. The court held that, considering together the judgment being appealed and the later judgments, the litigation was effectively terminated and, therefore, there was no longer a Rule 54(b) defect in the appeal.

692 F.2d at 114. In choosing between conflicting precedents, this court has held that the older rule is presumptively correct. This is a logical extension of the rule that

one panel within this circuit may not overrule the opinion of another. *Ryals v. Estelle*, 661 F.2d 904 (5th Cir.1981); *United States v. Henry*, 727 F.2d 1373 (5th Cir. 1984). The preference for the older authority is clearly appropriate here, where *Jetco* has been acknowledged repeatedly as the law of this circuit.

 *Jetco* and the cases interpreting it tell us that a premature notice of appeal properly may invoke this court's jurisdiction. We recognize, of course, that this rule is subject to the exceptions mandated by Fed.R.App.P. 4(a)(4).[7] However, Alcorn County's notice of appeal was filed after the district court's denial of its motion for a new trial and is not, under a literal reading of the rule, ineffective. We join the Third Circuit in holding that a premature notice of appeal does invoke appellate jurisdiction except in the narrow circumstances described in Rule 4(a)(4). *See Cape May Greene, Inc. v. Warren*, 698 F.2d 179 (3d Cir.1983). Accordingly, we hold that the notice of appeal filed by Alcorn County on January 3, 1983, was effective, and we turn to the merits of the appeal.

## V.

The district court held that, as a matter of law, Alcorn County was not entitled to submit to the jury its RICO claims or its claim for punitive damages under state law.[8] Reviewing these holdings in turn, we

---

**6.** *United States v. Taylor*, 632 F.2d 530, 531 (5th Cir. Unit A 1980) ("[F]inal judgment [does not] retroactively validate the premature notice of appeal.") *citing Kirtland v. J. Ray McDermott & Co.*, 568 F.2d 1166, 1169 (5th Cir.1978) (dismissal of appeal where notice of appeal was filed prior to Rule 54(b) certification).

**7.** Fed.R.App.P. 4(a)(4) provides:

> (4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice

> of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.

If a notice of appeal is filed prior to or during the pendency of one of the motions enumerated in Rule 4(a)(4), then that notice of appeal is a nullity. *Griggs v. Provident Consumer Discount Co., 459* U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *Van Wyk El Paso Investment, Inc. v. Dollar Rent-A-Car Systems, Inc.,* 719 F.2d 806, 807 (5th Cir.1983); *Williams v. Bolger,* 633 F.2d 410, 412–13 (5th Cir.1980).

**8.** One court has stated that there is no right to a jury trial in cases arising under 18 U.S.C. § 1964. *United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974). This argument has

reverse the judgment of the district court with respect to the RICO claim and affirm its judgment with respect to punitive damages.

### A.

The district court was of the opinion that Alcorn County could not prevail under the civil remedy section of RICO because the county had not alleged or presented evidence tending to prove that the defendants were connected to organized crime. We hold, in the first instance, that, in the light of recently decided cases, the district court's interpretation of the requirements of RICO was erroneous.[9] Second, we find that the county adduced evidence sufficient to require the submission of its civil RICO claim to the jury.

■ Until a few weeks ago, this circuit had not addressed whether a civil RICO plaintiff must allege or prove that its injury was caused by the operation of organized crime. In *Owl Construction Co., Inc. v. Ronald Adams Contractor, Inc.*, 727 F.2d 540 (5th Cir.1984), we held that it was error to dismiss a civil RICO complaint under Fed.R.Civ.P. 12(b)(6) because the plaintiff did not allege a tie to organized crime. This holding is in accordance with the positions of the Second, Seventh and Eighth Circuits,[10] and extends this circuit's

rule for criminal RICO prosecutions to the civil arena.[11] The district court's rationale for directing a verdict against Alcorn County on its civil RICO claim, i.e., that civil RICO redresses only the claims of those harmed by the activities of organized crime, was, therefore, erroneous.

■ On review of the trial transcript, we find that Alcorn County presented sufficient evidence in support of its civil RICO claim to survive the defendants' motion for a directed verdict. In reviewing a directed verdict, we must reverse and remand for trial if, viewing the evidence in the light most favorable to the party against whom it was rendered, "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.…" *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Viewing this directed verdict in the light of *Boeing*, we conclude that we must reverse.[12]

■ Broadly stated, a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In order to establish a violation of 18 U.S.C. § 1962(c), the plaintiff must prove:

not been made before this panel, and we do not reach this issue for that reason, the defendants having waived their right to trial by jury. In passing, though, we note the opinion of Judge Marshall of the Northern District of Illinois, that the holding of *Cappetto* should be read to apply only to cases for injunctive relief brought under section 1964(a) and not to actions for civil damages under section 1964(c). *NSC International Corp. v. Ryan*, 531 F.Supp. 362, 364 (N.D.Ill.1981).

**9.** The district court made its decision in November 1982, before many of the cases interpreting 18 U.S.C. § 1964(c), on which we now rely, were decided. At that time several courts had held that the involvement of organized crime was a necessary component of a civil RICO action. *See, e.g., Waterman Steamship Corp. v. Avondale Shipyards, Inc.*, 527 F.Supp. 256 (E.D. La.1981).

**10.** *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir.1983); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir.

1983); *Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982), *aff'd*, 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

**11.** *See United States v. Uni Oil, Inc.*, 646 F.2d 946 (5th Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1254, 71 L.Ed.2d 446 (1982).

**12.** The district court held that there could be no recovery under RICO because of the lack of allegations and proof of the involvement of organized crime. The defendants, on appeal, have not discussed the evidence, but have relied on arguments in support of the district court's rationale that RICO reached only the activities of organized crime. We therefore express no opinion regarding objections to the sufficiency of the evidence which may be raised by the defendants following retrial; we merely hold that the evidence presented at the first trial was sufficient to withstand a directed verdict.

(1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant [was "employed by" or] "associated with" the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity, i.e., by committing at least two acts of racketeering activity designated in 18 U.S.C.A. § 1961(1).

*United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir. Unit B 1981).[13] We find, in reviewing the transcript of the trial in this case, that Alcorn County did in fact produce substantial evidence tending to prove each of these elements.

▇▇ The plaintiffs maintain that the conduct of Cutchens, Creditor and USIS, which clearly affected interstate commerce, was an "enterprise" within the meaning of RICO. The definition of "enterprise" for purposes of RICO is very broad, and we think it beyond doubt that a reasonable jury could find that the association of Cutchens, USIS and its employees Creditor and Savitz, for the purpose of selling supplies to Alcorn County, constituted an enterprise affecting interstate commerce. *See United States v. Thevis,* 665 F.2d 616, 625–26 (5th Cir.1982).[14] Similarly, there was substantial evidence that the individual defendants and USIS were "associated with" this enterprise. Cutchens testified about specific actions of the individual defendants and USIS, acting in its corporate capacity, which advanced the goal of the enterprise, that is, to sell the office supplies to Alcorn County and to conceal those sales from county officials.

Finally, Cutchens' testimony, if believed, established that the defendants participated in the conduct of the enterprise's affairs through a pattern of racketeering activity as defined in section 1961(1) and (5). That section requires proof that each defendant committed at least two acts, within a specified time frame not relevant here, from an extensive list of predicate offenses. This list includes "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under state law and punishable by imprisonment for more than one year...." In *Phillips,* we said

> RICO does not criminalize engaging in a pattern of racketeering activity standing alone; the gravamen of a RICO offense is the conduct of an enterprise through a pattern of racketeering activity.... The two predicate crimes need not be related to each other but must be related to the affairs of the enterprise.... It does not matter that each defendant participated in the affairs of the enterprise through different or unrelated crimes, so long as an inference may be drawn that each crime was intended to further the enterprise's affairs.

664 F.2d at 1011–12 (citations omitted).

▇▇ Cutchens testified that on many occasions USIS sent her "gifts" in exchange for her cooperation in purchasing supplies from USIS and that USIS falsified some invoices so that the transactions would be easier for Cutchens to hide. She also testified that Creditor and Rado threatened her when she attempted to end her participation in the scheme. Cutchens' testimony constitutes substantial evidence that the defendants violated, on several occasions, MISS.CODE ANN. § 97–11–53. That criminal statute provides:

> No person shall directly or indirectly offer, promise, give or agree to give to any public official ... any money, property, or other tangible or intangible thing of value as an inducement or incentive for (a) the awarding or refusal to award a [public] contract ... (b) the purchase,

---

**13.** Because we find that the county met its evidentiary burden with respect to a violation of section 1962(c), we do not consider whether it also proved a conspiracy in violation of section 1962(d).

**14.** We are aware that the definition of "enterprise" may vary from case to case. We do not attempt to define what is or is not an enterprise under RICO in this decision. We simply hold that there was substantial evidence that an enterprise existed within the meaning of RICO.

sale or lease of [public] property ... or (c) the accomplishment of any official act or purpose involving public funds or public trust.

Violations of this section are punishable by up to ten years' imprisonment. The violations of a state anti-bribery statute, as alleged by Alcorn County and shown by the testimony offered at trial, clearly constitute the predicate offenses needed to establish a pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5). *See United States v. Sutherland,* 656 F.2d 1181, 1186 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 1617, 71 L.Ed.2d 663 (1982).[15] The testimony of Cutchens, if believed by the jury, establishes that she, Creditor and USIS through the commission of these acts, constituting a pattern of racketeering activity, participated in an "enterprise" which affected interstate commerce. The evidence of the violations of MISS.CODE ANN. § 97–11–53 is sufficient to warrant submitting the issue of a section 1962(c) violation to the jury. We therefore make no comment on evidence of other predicate offenses on which Alcorn County might rely on remand.

■■■ Having concluded that there was substantial evidence of a substantive RICO violation, we now examine whether there was evidence that this violation damaged the business of Alcorn County. A state auditor testified that the county had paid more than market price for the products it purchased from USIS and that the county had not received supplies for which it had paid. The auditor's testimony was supported by extensive documentary evidence. Although our review is somewhat limited by virtue of the fact that the defendants have not addressed the sufficiency of the county's evidence of damages, we find that the injury shown by the county through the auditor's testimony is compensable under section 1964(c). Most courts have read the "injury" requirement of section 1964(c) broadly. *See, e.g., Schact v. Brown,* 711 F.2d 1343, 1353–59 (7th Cir.), *cert. denied,*

— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983); *Bennett v. Berg,* 685 F.2d at 1059. We find particularly relevant the holding of *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N.Y.1981). In that case, the district court held that a shipping company could recover damages resulting from the payment of kickbacks, padded bills and bribes. The court stated,

[T]he broad remedial purposes of RICO clearly permits private law suits by a firm forced to pay bribes or kickbacks of any kind. Hellenic was directly injured if, as alleged, it paid for services it never received, the proceeds of which were used to pay off Hellenic employees and to bribe union officials. RICO was addressed to the precise form of racketeering activity which allegedly took place here.

523 F.Supp. at 248. The injury alleged by Alcorn County in this case, including unauthorized purchases at inflated prices, procured by bribery and threats, and payment for goods never received, falls within the scope of a civil RICO action.

The district court, therefore, erred in refusing to submit the issue of damages under 18 U.S.C. § 1964(c) to the jury.

**B.**

Whether Alcorn County was entitled to submit its claim for punitive damages to the jury is a somewhat more difficult question, because the theory under which the county seeks punitive damages is unclear to us. Alcorn County has never in this litigation pressed a claim for compensatory or actual damages under state law.

In an effort to ascertain the theory under which the county sought this recovery, we have examined carefully its complaint. First, the county maintains that the contracts of sale between it and USIS were illegal and, therefore, "void, or in the alternative, rescinded." The county states that it was entitled "to recover of and from [USIS] all ... payments in the total amount of $45,421.39." It is clear, and

---

**15.** *See also United States v. Clark,* 646 F.2d 1259 (8th Cir.1981), a criminal RICO prosecution based on facts almost identical to those of this case.

Alcorn County has not argued differently, that this claim is a request for the equitable remedy of rescission, predicated on the illegality of the contracts with USIS. The county makes no request for actual or punitive damages with respect to its claim for reimbursement of monies paid to the defendants. Second, the complaint sets forth allegations of embezzlement, conversion of county funds and conspiracy to violate Mississippi's public purchase laws. It makes no claim for actual damages. It does, however, request punitive damages of $250,000.

Punitive damages are given as an enhancement of compensatory damages and, in most jurisdictions, are not recoverable in the absence of a properly pleaded and proven cause of action for actual damages. 22 Am.Jur.2d, *Damages,* § 241. Mississippi law follows this general rule. *Lenaz v. Conway,* 234 Miss. 231, 105 So.2d 762 (1958). In many states, punitive damages are not recoverable at all in a court of equity. 22 Am.Jur.2d, *Damages,* § 239. Although Mississippi has recently adopted a rule allowing the award of punitive damages by its chancery courts, *Tideway·Oil Programs, Inc. v. Serio,* 431 So.2d 454 (Miss.1983), nothing in that case suggests any deviation from the rule of *Lenaz v. Conway.* There simply is no independent cause of action for punitive damages under Mississippi law, and that is, in effect, what the county has asserted in this case.

Applying these rules to Alcorn County's request for punitive damages in this case, we must affirm the verdict of the district court. The county chose, through its complaint, to seek an equitable remedy of cancellation or rescission rather than the legal remedy of contract damages. Neither did the county seek actual damages based upon tort law. While actual damages in this case may have been approximately the same as the amount sought for

rescission, they were not sought as such. Actual damages, however, would have excluded the real value of the supplies actually received and used or retained by the county. Moreover, in the district court the county's attorney, in support of his motion for a directed verdict, argued *solely* for recovery based on rescission and never mentioned recovery based on actual damages. In any event, the relief which the county requested was not damages, but restitution of amounts paid by it to USIS. This rescission relief restored the plaintiff to the position it would have been in had no contract been made. That is what Alcorn County asked for, received, and did not appeal. Had the county chosen to plead and present a contract or tort claim against the defendants in this case, the issue of punitive damages might have been appropriately submitted to the jury. However, choosing as it did to make no claim for actual damages and to receive and retain equitable judgment for rescission, the county had no claim for punitive damages.[16]

Therefore, we affirm the directed verdict against Alcorn County on its claim for punitive damages.

## VI.

Because the district court erred in refusing to submit to the jury the county's claims for treble damages under RICO, we must reverse the judgment below and remand the case for a new trial on the RICO claims. In so doing, we note that this claim is a complex one and will require carefully prepared jury instructions. Although there is a paucity of precedent on the civil RICO issue, the district court on remand will have the advantage of a number of appellate cases decided since this case was first tried; *e.g., Owl Construction Co., Inc. v. Ronald Adams Contractor, Inc.,* 727 F.2d at 540, 541, *and cases cited therein.* Criminal cases construing 18 U.S.C. § 1962 will, of course, be relevant

---

**16.** Our holding on the punitive damages claim obviates the need for us to decide a particularly thorny problem: whether both punitive damages and treble damages could be awarded to a plaintiff in a suit of this type. Indeed, at oral argument, Alcorn County's counsel conceded at one point that the county was not entitled to both, though he later indicated uncertainty on the issue.

to the question whether a violation of that section has been proved, although the standard of proof in a civil RICO case is not as stringent as in a criminal case. *United States v. Cappetto,* 502 F.2d at 1357.

Finally, it appears to us that a jury verdict awarding the county treble damages and attorney's fees under 18 U.S.C. § 1964(c) could duplicate the recovery already had on the rescission claim and the award of attorney's fees on January 28, 1983. These issues relating to double recovery are not before us today, however, and we are reluctant to comment on them in the absence of guidance from the parties and a more developed record of the facts. We merely note that duplicative damages should not be allowed. To the extent that duplication may be found to present a fact issue, special interrogatories submitted to the jury could help the court avoid such duplication in the entry of final judgment in this case.

The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED for further proceedings consistent with this opinion.