REAVLEY, Circuit Judge,
concurring:
I concur in the result reached by the majority, but I differ in the RICO analysis.
In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Court held that a “pattern of racketeering activity” embraced both a “relationship” requirement and a *530 “continuity” requirement. As to the relationship requirement it concluded that “criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.” Id. at 240, 109 S.Ct. at 2901 (emphasis added). Particularly when read in context, I believe that the Court intended this relationship requirement to be a minimal one. The Court recognized concerns that RICO has too broad a sweep and was being used to pursue “legitimate” businesses as well as organized criminals, but concluded that this result is compelled by the expansive language of the statute, and the failure of Congress to scale it back. Id. at 235-37, 109 S.Ct. at 2899. It concluded that “the legislative history shows that Congress knew what it was doing when it adopted commodious language capable of extending beyond organized crime.” Id. at 246, 109 S.Ct. at 2904. The Court rejected an Eighth Circuit requirement that a “pattern of racketeering activity” requires multiple illegal schemes, as opposed to a single fraudulent effort or scheme. Id. at 233-34, 109 S.Ct. at 2898-99. It concluded instead that “Congress indeed had a fairly flexible concept of a pattern in mind.” Id. at 239, 109 S.Ct. at 2900.
I would hold that Grammer’s conduct met this relationship requirement. The predicate acts included (1) repeated bribes to Dixon, (2) misrepresenting to Heller that there was no purchase option, and (3) misrepresenting to Heller that Grammer owned the equipment. These acts are not isolated events; they are related because they were all part of an ongoing scheme by Grammer to obtain the benefits of an above-market lease by deceiving the hospital and his lender. The loan facilitated this scheme by allowing Grammer to receive cash up front, thereby insulating him from a loss should the bribery later be discovered.
However, Grammer argues as a separate ground for rejecting the § 1962(a) RICO judgment, not reached by the majority opinion, that Heller did not prove an “investment injury.” I agree. Section 1962(a) makes it “unlawful for any person who has received any income derived ... from a pattern or racketeering activity ... to use or invest ... any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise_” 18 U.S.C. § 1962(a). We have held that a civil recovery under § 1964(c) premised on a violation of § 1962(a) requires the plaintiff to prove that his injury was caused by the defendant’s use or investment of racketeering income. “[A]ny injury under section 1962(a) must flow from the use or investment of racketeering income.” Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 584 (5th Cir.1992). Accord, Crowe v. Henry, 43 F.3d 198, 205 (5th Cir.1995) (“For subsection (a), this means that the injury must flow from the investment of racketeering income into the enterprise.”). I agree with the majority that Heller’s only evidence of damages was the unpaid amounts due on the note. Heller’s injury did not flow from the manner in which Grammer invested or used the loan proceeds once he had obtained them by-false pretenses. Heller did not tie its injury to Gram-mer’s use or investment of the loan, but instead claimed injury only on the basis of the initial act of making the loan to Gram-mer. Likewise, Heller did not establish that the bribes to Dixon caused Grammer to receive income and then invest or use that income in a manner that caused injury to Heller. Heller did not link Grammer’s use of the income from the leases, about which there was little if any evidence presented at trial, to Heller’s decision to make its loan to Grammer.[1]
*531 Furthermore, I reluctantly concur in the holding on punitive damages. We must follow Texas law, no matter what we think of it. I understand why the breach of a duty arising out of the terms of a contract, where the damages are measured precisely by the contract, may be treated as the predicate for an action on the contract rather than as an independent tort. However, proof of the elements of a cause of action for fraud should certainly establish an independent tort, whether or not the amount of actual damages would be the same if the claim were for breach of contract. But if the Texas courts dislike punitive damages so much as to decree that law, I am Erie bound to it.

. As the majority points out, Heller also won a judgment based on § 1962(c) of RICO. Unlike § 1962(a), this subsection does not require a defendant’s use or investment of racketeering income, but instead makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity....” I need not consider whether the § 1962(c) judgment should stand even if the majority agreed with me that the relationship requirement (which applies to both §§ 1962(a) and (c)) was met here. First, the district court clearly awarded this judgment in the alternative to the larger breach of warranty judgment. Heller makes no argument that the *531 district court erred in awarding these judgments in the alternative rather than stacking them, and makes no argument that the jury (which awarded only $500,000 under § 1962(c)) or the court erred in calculating damages under § 1962(c). Even after trebling by the court the § 1962(c) judgment was still smaller than the breach of warranty judgment, and Heller should be deemed to have elected the larger judgment. Second, as explained above, Heller's only proof of damages was the unpaid balance on the note. Since the breach of warranty judgment awards the full amount due on the note, adding the § 1962(c) judgment to the breach of warranty judgment would amount to a double recovery. See Alcorn County v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1171 (5th Cir.1984) (noting that "duplicative damages [under RICO and state common law] should not be allowed.”).