**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Odell MARSHALL,
Defendant–Appellant.**

No. 88–1608
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 7, 1989.

Bruce W. Cobb, Beaumont, Tex., Ruben F. Valdes, Houston, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
JOHNSON, and SMITH, Circuit
Judges.

PER CURIAM:

The grand jury returned a one count indictment charging appellant Michael Odell Marshall with possession with intent to distribute 67.5 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1). Following a bench trial, Marshall was convicted and sentenced to two years' imprisonment. Marshall filed a timely appeal to this Court.

Marshall raises two issues in this appeal. First, Marshall argues that the district court erred in denying his motion to suppress. Second, Marshall argues that the Sentencing Guidelines are unconstitutional. Because the second ground for error has been foreclosed by the Supreme Court opinion in *Mistretta v. United States*, — U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), we address only those issues surrounding the denial of the motion to suppress.

**I. FACTUAL BACKGROUND**

On March 23, 1988, at approximately 12:20 a.m., Marshall was stopped at the immigration checkpoint at Sierra Blanca, Texas. This checkpoint is located on Interstate Highway 10, approximately twenty miles from the United States–Mexico border. Border Patrol Agent Gilbert Guaderrama was working the midnight shift at the checkpoint. Guaderrama signalled Marshall to stop, and as Marshall approached the agent he rolled down his window so that he could talk to Guaderrama. Guaderrama stood next to the driver's side window, and asked Marshall his citizenship. Guaderrama testified that Marshall's "voice was shaking. There was no eye contact and he seemed somewhat apprehensive of the fact that he was being questioned by a law enforcement officer." Record Vol. 2 at 19.

As Marshall responded to the questions, Guaderrama noticed the odor of fresh marijuana. Shining a flashlight into the car, he also noticed a suitcase behind the front passenger seat. At this point, Guaderrama ushered Marshall to the secondary inspection area. A drug dog was utilized, and 67.5 pounds of marijuana was discovered in the automobile. The events following Marshall's arrival at the secondary inspection area are of little consequence to our consideration of the propriety of the district court's ruling on the motion to suppress.

The facts are adequately set out in the district court's order. Record Vol. 1 at 30. Our focus is on the events surrounding Marshall's initial stop at the checkpoint, which culminated in Agent Guaderrama's detection of the odor of marijuana. Marshall claims that Guaderrama conducted an unreasonable search in violation of Marshall's fourth amendment rights. It is to this issue that we now turn our attention.

## II. DISCUSSION

Arguing that his fourth amendment right to be free from unreasonable searches had been violated, Marshall moved to suppress all evidence obtained as a result of the search of his vehicle as well as any statements made after his arrest. At the hearing on the motion to suppress, Agent Guaderrama testified as to the events surrounding the detention of Marshall. On direct examination, Guaderrama indicated that he noticed Marshall's nervousness and a "very strong odor of fresh marijuana emitting from the vehicle." Record Vol. 2 at 8. On cross-examination, the following exchange occurred:

Q: ... [W]ould you explain how he looked nervous?

A: When I asked him to state his citizenship his voice was shaking. There was no eye contact and he seemed somewhat apprehensive of the fact that he was being questioned by a law enforcement officer.

Q: So at that point you suspected that he was nervous? At that point you—

A: I did notice he was nervous, yes....

Q: Okay. What did you do then? Did you poke your head into the car?

A: Yes. I leaned forward and I poked my head into the car as he was, as he was stating his citizenship and I smelled marijuana.

Q: So as he was saying he was a United States citizen, American, stating his citizenship, you were inside the car looking into the car?

A: No. I was not inside the car.

Q: You had your head poked into the car, you were looking inside the car? ... [D]idn't you indicate to the Defendant that it smelled like a quote-unquote whore house?

A: No, sir.

Q: Did you at any time indicate to him that it smelled, that there was any odor, any fragrance perhaps, anything identifiable? Did you indicate that to the Defendant at this point or just refer him to secondary inspection?

A: I just referred him to secondary inspection.

Record Vol. 2 at 19–21.

Marshall, testifying in his own behalf, gave the following account:

Q: On the night, on the morning in question, would you please indicate what happened when you approached the checkpoint.

A: As I pulled up I lowered the window most of the way to talk with the officer. He asked my citizenship. I told him U.S. Real soon after that he hung his body about up to his waist, had to lean forward quite a bit to let him lean into the car behind me. And he had a flashlight. He was looking all over and breathing deeply. He stood up then and back, and said, you know, your car smells like a whore house. I said, well, I like it that way. He said why don't you park it over there. I said okay. I parked it, I stepped out of the car....

Record Vol. 2 at 43–44. On cross-examination, Marshall explained the reference to the car smelling like a "whore house" by indicating that his brother's wife frequently placed air fresheners in the vehicle's interior.

Record Vol. 2 at 46–47.

In its order denying the motion to suppress, the district court found that "Guaderrama leaned forward toward the opened window as he was drawn by the odor of perfume and detected what appeared to be the odor of marijuana." Record Vol. 1 at 29. The court then concluded that the search occurring at the secondary inspection point was not unreasonable. When Agent Guaderrama questioned Marshall at the primary inspection point the defendant refused to make eye contact. Marshall

spoke with a quivering voice and otherwise manifested apprehensiveness as if to indicate that he did not want to be stopped for some reason. The reasons became more apparent when Guaderrama noticed the strong odor of perfume which was especially odd considering that Marshall was alone in the car. Guaderrama leaned forward to satisfy his trained curiosity at which time he detected the odor of marijuana.

In the present case, Agent Guaderrama initially detected the respective odors of perfume and marijuana during the primary inspection. His observation of the Defendant's behavior and the lack of explanation for the odor of a perfume-like scent served to increase his suspicion. The Agent's suspicion ripened into probable cause as he leaned forward and detected the odor of marijuana. Guaderrama's probable cause justified the use of [a] sniffer dog which further confirmed the probable cause which had already been established.

Record Vol. 1 at 25–26.

In his brief to this Court, Marshall presents a two-fold argument. First, he argues that the intrusion of the agent's head into the vehicle constituted a search. Second, he argues that this search was not supported by probable cause and was an unreasonable search in violation of the fourth amendment.

In support of his contention that a search occurred in this case, Marshall points to the Supreme Court opinion in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). In *Class*, an officer reached into the interior of a car to move some papers which were obscuring the vehicle identification number. The Court held that such an intrusion into the interior of the vehicle constituted a search. Relying on *Class*, Marshall argues that Guaderrama's intrusion, although it did not physically disturb the interior or contents of the car, likewise constitutes a search for fourth amendment purposes. We decline to address today whether the less intrusive circumstances of the instant case compel it to be distinguished from *Class*. Rather, we hold that even if a search did occur, it was reasonable and not in violation of Marshall's right to be free from unreasonable searches and seizures.

The district court's order rests on a finding that during the primary inspection, agent Guaderrama detected the odor of marijuana which, therefore, compelled him to place his head into the car's interior. Especially in light of the testimony concerning the strength of the marijuana odor [1] we cannot conclude that such a finding was clearly erroneous.

There is no question but that agent Guaderrama was authorized to initially stop Marshall at the checkpoint. *United States v. Martinez–Fuerte*, 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976). Guaderrama was entitled to ask the questions at the checkpoint. During questioning, the smell of marijuana came into "plain view". *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *U.S. v. Donald Edward Taylor*, 871 F.2d 118 (5th Cir.1989) (unpublished). As we noted in *Taylor*, once the officer detected the odor of marijuana, probable cause existed to search the vehicle.

Furthermore, when determining the reasonableness of a search, a court must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed. 2d 110 (1983). The government has a significant interest in controlling the illegal entry of aliens and contraband from Mexico across the United States border. Furthermore, the intrusion was minimal and occurred for the sole purpose of further investigating the odor escaping from the car. Even if a search occurred in this case, it was not an unreasonable search proscribed by the fourth amendment.

---

1. The agent at the secondary inspection point indicated that the odor was strong and that he could smell it from outside the car. *See* e.g. 2 R at 31; 2 R at 40.

## III. CONCLUSION

Marshall has not demonstrated that the district court erred in denying the motion to suppress. Even if the intrusion of the agent's head into the vehicle constituted a search, it was not an unreasonable search rendering the evidence recovered subject to suppression. Having discerned no reversible error, Marshall's conviction is affirmed.

AFFIRMED