**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Maurice Deteige SHEPPARD,
Defendant–Appellant.**

No. 89–1422.

United States Court of Appeals,
Fifth Circuit.

May 14, 1990.

David R. Weiner and Charles B. Tennison, San Antonio, Tex., for defendant-appellant.

Michael R. Hardy, LeRoy Morgan Jahn, Asst. U.S. Attys., and Ronald F. Ederer, Interim, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING, GARWOOD and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Following a bench trial, defendant-appellant Maurice Deteige Sheppard (Sheppard) was convicted of possessing cocaine with intent to distribute it. In this appeal from his conviction, Sheppard challenges only the district court's denial of his motion to suppress evidence, contending that the evidence in question was the fruit of an illegal search. We affirm.

### Facts and Proceedings Below

On the morning of January 11, 1989, Sheppard arrived in a California-licensed Cadillac with passenger Keith Tobin (Tobin) at the permanent U.S. Border Patrol checkpoint located a few miles west of Sierra Blanca, Texas. At the checkpoint, which is about twenty miles from the Mexican border, agents stop most traffic traveling east on Interstate 10 and inquire about the citizenship of vehicle occupants. Border Patrol Agent Lonnie Hillin (Hillin) approached the Cadillac at the checkpoint's primary

inspection area and signaled Sheppard to lower his window, which Sheppard did. In accordance with his standard practice, but without the consent of or any articulable suspicion concerning the occupants, Hillin then leaned his head into the car to establish eye contact with the occupants when questioning them about their citizenship. He testified that "when I talk to someone I look at them" and that eye contact thus established was useful in determining the veracity or evasiveness of a person's response to questions.[1]

Hillin immediately detected the odor of freshly burnt marihuana in the interior of the Cadillac, but did not inform Sheppard or Tobin of this. He also testified that both Sheppard and Tobin appeared to be dumbfounded and confused when asserting that they were American citizens, and that their speech was slurred and their eyes were bloodshot.

Suspicious that the car contained contraband, but without so informing Sheppard or Tobin, Hillin directed that Sheppard drive to the secondary inspection area and exit the car. There, upon inquiry from Hillin, Sheppard asserted that the Cadillac's trunk contained suitcases and clothing. In response to Hillin's request to view the contents of the trunk, Sheppard replied, "Sure, no problem," and opened the trunk with a key, exposing three suitcases and a black suit bag. Sheppard related to Hillin that the luggage belonged to Tobin and himself and that the suit bag held suits and sweaters. He also agreed to Hillin's request to look inside the suit bag, saying, according to Hillin, "anything you need, whatever you need, anything you need at all."[2] When Sheppard moved the suitcases off the suit bag, Hillin noticed the outline of a brick-shaped object that felt hard.

Having previously seen narcotics concealed in such a fashion, Hillin believed that Sheppard and Tobin were carrying contraband. Responding to Hillin's further questioning, Sheppard stated that the suit bag belonged to him and that he would not mind Hillin's looking inside it. Upon unzipping the bag, Hillin observed a brick-shaped object wrapped in duct tape sitting on top of sweaters. Sheppard asserted that the object contained pictures and stated, "you don't need to look at it."

At this point, certain that Sheppard and Tobin were transporting narcotics, Hillin asked Sheppard, who appeared apprehensive and attempted to make eye contact with Tobin, to place his hands on the car. Agent Jorge Reza (Reza), who had been covering Hillin, asked Tobin to exit the vehicle. Hillin assured Sheppard that he was not under arrest, but would be detained, pending analysis of the brick-shaped object, and frisked for weapons. As soon as Hillin said this, Sheppard and Tobin immediately began to flee, shoving the agents aside and forcibly resisting their efforts to prevent the escape. The pair then hurriedly jumped into the Cadillac and sped away from the checkpoint.

With agents in hot pursuit, Sheppard absconded to the town of Sierra Blanca, on the way driving through a barbed-wire fence, and eventually fled through the desert. Near Sierra Blanca, agents observed Sheppard stop the car, remove the suit bag from the trunk, and begin throwing objects, some of which turned out to be marihuana, from the bag into the brush. The chase resumed until the Cadillac suffered a blowout, at which time it became disabled and Sheppard and Tobin surrendered.

Agents recovered from the Cadillac and the brush 10 bricks of 92 percent pure cocaine weighing about 10 kilograms with an El Paso street value of $300,000. The Border Patrol canine handler on the scene found the remains of a marihuana cigarette and debris in the car, as well as a bag containing .02 pounds of marihuana. The

---

1. To the extent not inconsistent with the trial court's fact-findings, which are shielded by the clearly erroneous rule, we state the evidence most favorably to the government, the prevailing party below. *See United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984).

2. Sheppard testified that he did not give Hillin consent to search (Tobin did not testify); however, the district court found otherwise, and Sheppard does not challenge these findings.

handler also testified that his canine alerted to the exterior of the Cadillac and that he could detect the odor of marihuana coming from the car before entering it.

Sheppard waived his right to trial by jury and, by agreement between the parties, his motion to suppress was heard together with the evidence on the merits at the bench trial. The district court denied the motion to suppress and found Sheppard guilty as charged of possessing more than five kilograms of cocaine with intent to distribute it. The court then sentenced him to 151 months' imprisonment to be followed by 5 years' supervised release. Sheppard brings the present appeal, challenging only the denial of his motion to suppress.

## Discussion

The district court's findings and conclusions entered in support of its denial of Sheppard's motion to suppress include the following:

"On January 11, 1989 Defendant drove up to the checkpoint in a 1988 Cadillac and was signalled to stop by Agent Hillin of the U.S. Border Patrol. Hillin bent down to speak to the Defendant and his passenger, Keith Tobin. The two men looked surprised and dumbfounded. Agent Hillin detected the odor of burnt marijuana emitting from the inside of the vehicle. Upon inquiry, both men replied that they were U.S. citizens. Hillin observed, however, that both men had blood-shot eyes and that they spoke with slurred speech. He directed the Defendant to pull the vehicle into the secondary inspection area.

" . . . .

"At the time that Agent Hillin referred Sheppard to secondary inspection, he had

these indices of suspicious behavior before him: (1) a strong odor of burnt marijuana was emitting from the vehicle; and (2) the two occupants had blood-shot eyes and slurred speech.

" . . . .

"Sheppard consented by word and deed to the search of the trunk of the automobile. Agent Hillin asked Sheppard if he would open the trunk not once but twice and Sheppard gave an affirmative "sure" to both queries, then proceeded to open the trunk for the Agent. The Court does not find that the circumstances of the inquiry or the manner of response rendered the consent involuntary for the purposes of the Fourth Amendment.

" . . . In the alternative, probable cause to believe that Sheppard was trafficking in contraband arose first when Hillin detected the smell of burned marijuana at the primary inspection area, second when the suspects fled the scene of the investigation [footnote omitted] and third when Sheppard was observed throwing the brick-shaped contents from out of the suit bag. These indices comprise the matrix of elements sufficient to give the Agents probable cause to take Sheppard into custody.

" . . . Sheppard was not taken into custody until after he attempted to flee from the secondary inspection site." [3]

On appeal, Sheppard does not challenge any of the district court's determinations presented in the text above. Rather, he contends only that his Fourth Amendment rights were violated when Hillin intruded his head *into* the open driver's window of the Cadillac at the primary inspection area, *thus* smelling marihuana.[4] Sheppard's en-

---

**3.** The district court also determined that the "interrogation" which occurred prior to Sheppard's flight and subsequent arrest "did not offend the Fourth Amendment and was related to the legitimate interest of the sovereign to determine whether illegal aliens were being smuggled into the United States."

**4.** Although the district court did not expressly so find, it appears uncontroverted that Hillin did then stick his head, or a part of it, into the Cadillac to at least some small extent beyond

where the window pane would have been if it had not been lowered. Hillin's testimony is that he put his head "into the window" or "in the car"; he did not specify how far, but the inference from his testimony is that his head entered the car only far enough to make eye contact with the occupants. Sheppard testified that "just his neck," but not Hillin's shoulders, entered the car. Sheppard further urges that Hillin did not smell the marihuana *until* at least some portion of his head was *within* the car. Again, the district court made no express find-

tire argument is encapsulated in the following statement in his appellant's brief:

> "Defendant Sheppard submits that Agent Hillin's conduct in intruding his head into the vehicle without probable cause or consent constituted an unreasonable search in violation of Sheppard's rights under the Fourth Amendment. Hillin's referral of the vehicle to the secondary inspection area, his request to search the trunk, and his actual search of the trunk, which resulted in discovery of the contraband, were based on what he observed (the odor of burnt marijuana) as the result of this unlawful search. Consequently, the evidence seized as the result of the unlawful search, and the testimony concerning that evidence, should have been suppressed."

The government urges affirmance on three alternative grounds. First, it contends that the only issue raised on appeal—whether the insertion of Hillin's head into the car at the primary inspection area constituted an unlawful search prohibited by the Fourth Amendment [5]—was not raised below. We reject this contention as a basis for affirmance, agreeing with Sheppard that, for this purpose, the issue was adequately raised at the suppression hearing,

as the district court recognized in its sentencing colloquy with Sheppard's counsel. Next, the government argues that Hillin's insertion of his head into the vehicle was not inconsistent with the Fourth Amendment, either because it was reasonable or did not constitute a search (or seizure).[6] We do not reach this contention, as we sustain the government's final argument for affirmance, namely that the connection between Hillin's challenged conduct—inserting his head into the open driver's window of the Cadillac—and the acquisition of the evidence material to Sheppard's guilt of the offense in question is sufficiently attenuated so that the taint resulting from the challenged conduct is dissipated.

Here, when inserting his head into the window, Hillin neither observed nor discovered anything material to Sheppard's guilt of the instant cocaine offense. The marihuana odor Hillin then noticed, however, did lead to a series of events—his request for permission to search the trunk and commencement of that search, the flight of Sheppard and Tobin, their eventual capture, and the finding of the cocaine—that ultimately established Sheppard's guilt of possessing cocaine with intent to distribute

---

ing on this matter. Hillin's testimony, though not entirely clear, tends to support Sheppard in this respect. Hillin variously stated, "When the window was opened I bent down, made eye contact with both subjects and determined citizenship. At this point when I bent down to talk to the gentlemen I could smell marijuana as I was talking with the gentlemen" and "I stuck my head into the window, then identified myself as an agent, Border Patrol, and that is when I could smell the marijuana. Of course, I didn't go ahead and say, yeah, I smelled marijuana. I went ahead and conducted my citizenship determination...." The cross-examination of Hillin includes the following:

"Q. Then you testified that you stood there and put your head in the car and smelled a strong odor of burnt marijuana, freshly burnt marijuana?

"A. Yes, sir.

"....

"Q. You testified that you didn't smell any marijuana until you stuck your head in the car?

"A. The window was up before that."

5. A matter related to this issue is whether Hillin smelled the marihuana before his head was at least partially within the car.

6. The government makes this argument even though neither Sheppard nor Tobin consented to Hillin's putting his head in the window and no suspicion then existed regarding either of them. The government relies on our decisions in *United States v. Marshall*, 878 F.2d 161 (5th Cir.1989) and *United States v. Taylor*, No. 88-1559 (5th Cir. March 17, 1989) [871 F.2d 118 (table)] (per curiam) (unpublished). In *Marshall*, the checkpoint agent "detected the odor of marijuana which, therefore, compelled him to place his head into the car's interior," this "intrusion ... occurred for the sole purpose of further investigating the odor escaping from the car," and "the marijuana odor" was "strong and ... he [the agent] could smell it from outside the car." *Marshall*, 878 F.2d at 163 & n. 1. In *Taylor*, the driver's "voice cracked when he spoke" in response to the checkpoint agent's questions and the agent then "leaned his head in the driver's window to better hear ... [his] responses" and "smelled the odor of marihuana." *Id.* at 2 [871 F.2d 118 (table)]. We held this was legitimate. Sheppard relies on *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986).

it. Assuming *arguendo* that Hillin's inserting his head in the window violated Sheppard's Fourth Amendment rights, the relevant evidence on the issue of guilt or innocence—Sheppard's flight and the cocaine itself—would thus be inadmissible under the "fruit of the poisonous tree" doctrine, unless it falls within the attenuation exception to the exclusionary rule.

◼ The exclusionary rule is a judicially-designed remedy whose primary purpose is to discourage unconstitutional (or possibly otherwise illegal) police misconduct. *See Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987); *United States v. Williams*, 622 F.2d 830, 841–42 (5th Cir.1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.1(f) (1987). It functions to suppress evidence obtained directly or indirectly through illegal police activity. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

The Supreme Court has established four exceptions to the exclusionary rule that allow for the admission of evidence when the means by which it was obtained are sufficiently distinguishable from the challenged police conduct. First, evidence is admissible even if it is obtained as a result of a warrant that is wanting in probable cause or is technically defective so long as the authorities have relied in objective good faith on a facially valid warrant. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984). Second, the exclusionary rule is not employed when the nexus between the illegal police activity and attainment of the evidence is sufficiently attenuated so that the taint resulting from the misconduct is dissipated. *See Wong Sun*, 83 S.Ct. at 417. Third, evidence is not excluded if the government obtained it from a source independent of the illegality. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). Fi-

nally, the rule does not exclude evidence that inevitably would have been discovered lawfully. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

◼ Two circumstances lead us to conclude that in the instant case the connection between the challenged police activity and the acquisition of the relevant evidence is sufficiently attenuated so that any taint from the allegedly illegal conduct is dissipated. First, under our holding in *United States v. Fike*, 449 F.2d 191, 193 (5th Cir. 1971), Sheppard's voluntary consent to the search at the secondary inspection area broke the causal connection between the alleged primary illegality and the evidence introduced at trial. In *Fike*, defendant left a stolen vehicle with an automobile dealer while he test drove one of the dealer's cars. When defendant failed to return, the dealer summoned the police to the lot, where officers searched the car and removed it to the sheriff's office. Following his capture, defendant consented to a search of the vehicle, which yielded the vehicle identification number that was admitted as evidence at trial.

The *Fike* panel, following *Wong Sun*, *supra*, rejected defendant's argument that suppression was required because but for the first search, the second search would never have occurred. In concluding that any taint had dissipated, this Court asserted that "[c]onsent to search has been repeatedly recognized as sufficient to waive Fourth Amendment rights" and that it also acts to sever any nexus between the alleged Fourth Amendment violation and the discovery of evidence in the second search. *Id.* at 194.

Sheppard makes essentially the same "but for" argument as did the defendant in *Fike*, but fails to demonstrate that the evidence "has been come at by exploitation" of the alleged illegality. *Wong Sun*, 83 S.Ct. at 417. Sheppard does not suggest on appeal that his consent to the search at the secondary inspection area was involuntary,[7] nor does he here contend that his

---

7. *Cf. United States v. Cherry*, 794 F.2d 201, 205     (5th Cir.1986) ("Voluntariness is a question of

decision to so consent was influenced by the fact that Hillin had smelled marihuana (a fact of which Sheppard was unaware) or had inserted his head into the car. *See Fike*, 449 F.2d at 194; *United States v. Carson*, 793 F.2d 1141, 1151 & n. 1 (10th Cir.1986). *See also State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976).[8]

Additional factors that we must consider when determining whether the evidence was discovered by exploitation of the alleged misconduct are the temporal proximity of the two intrusions and, as "particularly" important, the purpose and flagrancy of the challenged action. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). While not determining whether the challenged conduct constituted an illegal search, we conclude that the brief intrusion into the Cadillac to establish eye contact with its occupants to gauge the veracity or evasiveness of their responses to citizenship inquiries was not at all flagrant, but was at worst a most minor and technical invasion of Sheppard's rights.[9] Even though the time span be-

tween the challenged conduct and Sheppard's consent was short, we cannot find that the second search resulted from the exploitation of the challenged conduct.[10] Sheppard's voluntary consent to the search of the Cadillac served to attenuate the connection between the alleged misconduct and the discovery of the contraband.

The second circumstance that persuades us that the attenuation exception is apposite in this case is Sheppard's illegal flight from the secondary inspection area. Such a reaction to the search to which Sheppard had consented constituted criminal activity and functioned to break any nexus between the challenged insertion of Hillin's head into the window and the evidence seized following the apprehension of Sheppard and Tobin. *See United States v. Nooks*, 446 F.2d 1283 (5th Cir.), *cert. denied*, 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971) (illegal flight broke nexus between illegal arrest and search subsequent to apprehension); *United States v. Bailey*, 691 F.2d 1009 (11th Cir.1982), *cert. denied*, 461

---

fact to be decided by the trial court and upheld on appeal unless clearly erroneous."). *See also United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1012 (5th Cir.1990) (defendant's consent at Sierra Blanca was voluntary even though defendant was not informed of his right to refuse to consent).

**8.** We recognize that our decision in *United States v. Melendez–Gonzalez*, 727 F.2d 407, 413–14 (5th Cir.1984), appears to be to the contrary. However, we cannot reconcile *Melendez–Gonzalez* with *Fike*, which *Melendez– Gonzalez* does not cite. Indeed, *Melendez–Gonzalez* cites no authority at all on this issue, and does not even purport to address the attenuation doctrine. As *Fike* precedes *Melendez–Gonzalez*, we are bound by *Fike*. *See, e.g., Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1166 (5th Cir.1984). We also observe that in *Carson* the Tenth Circuit expressly elected to follow *Fike* in preference to *Melendez–Gonzalez*. *See Carson*, 793 F.2d at 1153.

**9.** We note that Hillin's purpose in putting his head in the vehicle was not to conduct a search, but rather to assist in ascertaining the citizenship of its occupants—his function as a Border Patrol agent. *See United States v. Jackson*, 825 F.2d 853, 861–62 (5th Cir.1987) (en banc) (vehicles at Sierra Blanca may be briefly detained so that occupants can be questioned about their citizenship); *Gonzalez–Basulto*, at 1012. Exclusion of the evidence here would not greatly

work to promote the deterrence function of the exclusionary rule. *Cf. Leon*, 104 S.Ct. at 3412–15 (exclusionary rule should be applied only when "its remedial objectives are thought most efficaciously served").

**10.** We observe that agents at the checkpoint need not articulate a reason for sending motorists to the secondary inspection area. *See Jackson*, 825 F.2d at 862. Therefore, we cannot even necessarily say that, but for the challenged conduct, the evidence would not have been discovered. And, in any event, Sheppard's referral to the secondary inspection area did not *of itself* amount to an illegal detention, in contrast to the situation in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2562–64, 65 L.Ed.2d 633 (1980). There, the suspect confessed after being in what was assumed to be an illegal detention for forty-five minutes. Applying the attenuation exception to the exclusionary rule, the Court emphasized the informal nature of the detention. Further, here the putatively illegal conduct—Hillin's inserting his head into the window—had come to an end when Sheppard gave his consent, and, so far as Sheppard was then aware, no longer had any relevance to the situation (by contrast, in *Rawlings* the illegal detention continued until the confession was made, and the confessor was at all times aware of the detention and its purpose). *See also New York v. Harris*, —— U.S. ——, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).

U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983) (defendant's response of fleeing illegal arrest is new crime for which defendant may constitutionally be arrested and evidence obtained incident to arrest may be used at trial); *United States v. Garcia,* 516 F.2d 318 (9th Cir.), *cert. denied,* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975) (illegal flight broke nexus between presumed illegal stop and search following apprehension). *See also United States v. Walker,* 535 F.2d 896 (5th Cir.1976) (search pursuant to second warrantless arrest valid notwithstanding defendant still held under first, putatively illegal arrest, where first arresting officer summoned second officer who, after further investigation of the same suspect offense at the scene, made the second arrest). *Cf. United States v. Garcia–Jordan,* 860 F.2d 159 (5th Cir.1988) (false statement made following an illegal stop is not fruit of the police misconduct; citing *Nooks* and *Bailey* with approval). Unlike *Nooks, Bailey,* or *Garcia,* Shep-

pard's shoving Hillin aside and fleeing was not a direct response to the alleged police misconduct, but rather was a response to the voluntarily-consented-to search at the secondary inspection area. As a result, the link between the intrusion at the primary inspection area and the evidence recovered after the chase is even more attenuated than in those cases.

Further, ruling against Sheppard should not serve to encourage police misconduct; such flight in this setting is not a foreseeable consequence of the police activity in question or the search at the secondary area and could not be counted on by the Border Patrol to salvage an illegal search. Exclusion in this case therefore would not promote "the fundamental tenets of the exclusionary rule." *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 1061, 55 L.Ed.2d 268 (1978). *See also New York v. Harris,* —— U.S. ——, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).[11]

**11.** We briefly respond to the principal points made in Judge King's dissent. We are not persuaded that our decision conflicts with *United States v. Robinson,* 625 F.2d 1211 (5th Cir.1980). In *Robinson* we did *not* hold that the consent to search was tainted by the prior putatively illegal seizure, but rather remanded for a determination of that issue (along with others) after concluding that under *Brown* the mere fact that the consent was voluntary did not of itself necessarily remove the taint. *Brown* and its progeny, and *Robinson,* differ from the present case, so far as the consent to search is concerned, in several important aspects. In *Brown,* at the time of the challenged confession the defendant was being held in custody pursuant to the illegal arrest—the Fourth Amendment violation was ongoing. Here, the putatively illegal intrusion had wholly ceased, and the legality of the referral to secondary in no way depended on it. Further, in *Brown* the defendant knew he was in custody pursuant to the arrest and that the arrest was made for the purpose of questioning him about the murder to which he then confessed. But in the case *sub judicia,* Sheppard, when he consented to the search at secondary, did not know that Hillin had smelled marihuana when he had briefly put his head in the window or that such insertion of Hillin's head had anything to do with the referral to secondary or the request for permission to search. Finally, in *Brown* the purpose of the illegal arrest was to question the defendant about the murder, and in response to that questioning the defendant confessed to the murder; here, by contrast, the purpose of the putatively illegal intrusion was not to detect contraband, but rather to aid in the

citizenship inquiry by allowing Hillin to make eye contact with the car's occupants in order to gauge the veracity of their responses to his questions in this respect. Hence, here, unlike *Brown* and *Robinson,* there is no meaningful nexus between the purpose of the putatively illegal conduct and the allegedly tainted consent.

Moreover, the dissent overemphasizes temporal proximity—which it in substance elevates to a *per se* status—and ignores purpose. *Brown* indicates that of all the factors to be considered, that which is "particularly" relevant is "the purpose and flagrancy of the official misconduct." *Id.,* 95 S.Ct. at 2262 (footnote omitted). Lack of flagrancy, which the dissent in essence concedes here, may alone suffice to overcome temporal proximity, as *Rawlings* demonstrates. Here there is not only lack of flagrancy, but also lack of nexus between the purpose of the police conduct and either what was disclosed thereby, the consent, or the evidence in issue.

We do not hold that any voluntary consent to search of itself necessarily attenuates a prior illegality. However, this case involves more than simply voluntary consent. Here, the intrusion had ended prior to the consent and Sheppard was unaware that anything had been discovered as a result of that intrusion. Considering "the purpose and flagrancy of" the putative "official misconduct" and the further dictates of *Brown,* as well as the referenced circumstances, and the voluntary consent, we hold that the connection between the challenged intrusion and the subsequent search of the trunk was attenuated.

Finally, Sheppard's and Tobin's flight in the car from the secondary inspection area after

## Conclusion

For the foregoing reasons, we are unable to conclude that the district court erred in denying Sheppard's motion to suppress, and Sheppard's conviction is accordingly AFFIRMED.

KING, Circuit Judge, dissenting:

The majority, relying on *United States v. Fike*, 449 F.2d 191 (5th Cir.1971), concludes that in light of the "minor and technical invasion" at issue,[1] Sheppard's "consent to search ... acts to sever any nexus between the alleged Fourth Amendment violation and the discovery of evidence in the second search." Alternatively, the majority concludes that Sheppard's flight "functioned to break any nexus between the challenged insertion of Hillin's head into the window

and the evidence seized following the apprehension of Sheppard and Tobin." I dissent because the consent to search and subsequent flight occurred within moments of, and were the products of, Agent Hillin's unconstitutional intrusion into Sheppard's vehicle. If the attenuation doctrine can be used to legitimize a Fourth Amendment violation under the facts of this case— where only a few minutes separate the violation from the circumstances that the majority holds sever the causal nexus between the violation and the subsequent seizure—then the attenuation doctrine essentially obliterates the Fourth Amendment.

### I.

The majority first errs in concluding that Sheppard's consent to search, moments af-

---

Hillin had commenced to search the trunk and informed Sheppard that he would be detained pending a weapons frisk and examination of the wrapped bricks, quite clearly involved a forcible and assaultive impeding of the agents in the performance of their duties. 18 U.S.C. § 111(a). Agent Reza testified that "Sheppard began elbowing, throwing elbows at Agent Hillin's face," after which Reza and Tobin "started our little match to see who was going and who wasn't going," which involved Reza trying physically to prevent Tobin from getting back in the car, Tobin making a move for what Reza thought was a weapon, Reza drawing his gun, and Tobin then trying to close the door on Reza. Another agent testified to observing "a struggle of some sort" and seeing Sheppard "kind of push him [Hillin] off." None of this was denied by Sheppard (Tobin did not testify). This scenario fits well within the rationale of *Bailey*, and plainly provided probable cause for halting the fleeing vehicle. As *Bailey* points out, *Wong Sun* involved "pure flight" without any "physical struggles" with the agents and was considered by the Supreme Court "to be 'ambiguous conduct' because the defendant reasonably may not have known or believed that the persons pursuing him were truly law enforcement officers." *Bailey*, 691 F.2d at 1019 n. 12. Here, by contrast, there were physical struggles with the agents, there was no "pure flight," Sheppard and Tobin clearly knew the agents were government officials openly engaged in the performance of their duties on government premises, and there was nothing whatever ambiguous about their flight.

**1.** The majority assumes, without deciding, that Agent Hillin's insertion of his head within Sheppard's vehicle constituted a Fourth Amendment violation. Because I would find no attenuation, I briefly address this issue.

It is undisputed that vehicle searches at permanent checkpoints, such as Sierra Blanca, must be based upon probable cause. *United States v. Jackson*, 825 F.2d 853, 860–61 (5th Cir.1987) (en banc), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988). In the instant case, the majority correctly notes that Agent Hillin had neither probable cause nor articulable suspicion. Thus, the question boils down to whether Agent Hillin's placing his head within Sheppard's vehicle (and detecting the scent of marihuana) was a search. I have no trouble concluding it was.

Under our jurisprudence, agents may peer into a vehicle from the outside without violating the Fourth Amendment. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ("There is no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passerby or diligent police officer."). Agents may employ their olfactory faculties as well. *United States v. Martinez–Miramontes*, 494 F.2d 808 (9th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *United States v. Marshall*, 878 F.2d 161 (5th Cir.1989). However, the Supreme Court has held that "a car's interior as a whole is nonetheless subject to Fourth Amendment protection" and even a minor "intrusion in that space constitute[s] a 'search.'" *New York v. Class*, 475 U.S. 106, 114–15, 106 S.Ct. 960, 965–66, 89 L.Ed.2d 81 (1986). Thus, where an officer "could obtain the view only by leaning *into* the car," a search has occurred. W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.5(c) (1987 & Supp.1990) (emphasis in original). Here, Agent Hillin detected the scent of marihuana only after intruding within the interior of Sheppard's vehicle. Under *Class*, a search occurred.

ter Agent Hillin's illegal intrusion into Sheppard's vehicle, attenuates the officer's intrusion. In reaching its conclusion, the majority relies on outdated precedent, ignores the close temporal proximity between Agent Hillin's illegal search and Sheppard's consent, and underestimates the need for deterrence of Agent Hillin's systematic Fourth Amendment violations.

The majority's reliance on the 1971 decision of *United States v. Fike* is misplaced. As we explained in *United States v. Robinson,* 625 F.2d 1211 (5th Cir.1980), the *Fike* analysis was laid to rest by the Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *See also Dunaway v. New York,* 442 U.S. 200, 216–20, 99 S.Ct. 2248, 2258–60, 60 L.Ed.2d 824 (1979). In *Brown,* the Court held that statements made subsequent to an illegal arrest might be tainted even though those statements were voluntarily given under the Fifth Amendment. 422 U.S. at 601–02, 95 S.Ct. at 2260–61. In so holding, the Court rejected various per se approaches to attenuation analysis. Instead, a multifactor test was to be employed. *Id.* at 603–04, 95 S.Ct. at 2661–62. Under that test, intervening factors such as consent to search are relevant, but "[n]o single fact is dispositive." *Id.* at 603, 95 S.Ct. at 2261. Critical to *Brown*'s functional approach was the element of time. As the Court explained, in order for a causal chain under *Wong Sun* to be broken, the question is whether evidence is purged of its primary taint, and "temporal proximity" must be considered in answering that question. *Id.* at 603, 95 S.Ct. at 2261. However, *Fike* and other "pre-*Brown* opinions merged the tests" for voluntariness and attenuation, finding that consent severed a prior unconstitutional search and necessarily removed its taint—even if consent occurred only a short time after an illegal intrusion. Thus, *Fike* failed to recognize "the distinction and need for proof of both voluntariness and attenuation." *Robinson,* 625 F.2d at 1220 n. 14 (citing *Fike*).

The majority notes that the post-*Brown* decision of *United States v. Melendez–Gonzalez,* 727 F.2d 407 (5th Cir.1984) cannot be reconciled with *Fike.* Mysteriously, the majority feels bound by *Fike* as it precedes *Melendez–Gonzalez.* However, since *Brown* effectively rejects our analysis in *Fike,* as we recognized in *Robinson,* the post-*Brown* decision of *Melendez–Gonzalez* becomes the rule of this circuit.[2]

In *Melendez–Gonzalez,* roving border patrol agents illegally stopped Melendez–Gonzalez and asked him for his identification. Upon examination, the agents noticed a small hole in the trunk of his car. The agents peered inside and detected a burlap covered object. Melendez–Gonzalez refused the officer's request to open the trunk. Nevertheless, the officers partially sprung the lid of the trunk with a tire tool and discovered marihuana. Later, after Melendez–Gonzalez was at the station and had been given his *Miranda* warnings, he signed a written consent to search the car, and the officers removed the marihuana. *Melendez–Gonzalez,* unlike *Fike,* recognized that consent to search does not necessarily sever the nexus to a prior illegality. Rather, "the Government must also ... prove that the consent was sufficiently attenuated from the illegal stop." 727 F.2d at 414. Under the facts in *Melendez–Gonzalez,* the court concluded that despite the time lapse between the illegal search and the consent to search at the station, the seizure was not sufficiently attenuated from the earlier illegal stop and search. *Id.* at 409.

In the instant case, the causal connection between the unconstitutional intrusion into Sheppard's automobile and Sheppard's subsequent consent to the search of his trunk is even closer than that of *Melendez–Gonzalez.* The majority concedes that the "time span between the challenged conduct and Sheppard's consent was short...." Indeed, Agent Hillin immediately directed Sheppard to the secondary inspection area

---

**2.** In choosing between conflicting precedents, the older rule is presumptively correct. That presumption is rebutted where an intervening decision of the Supreme Court casts doubt on the earlier opinion. *Alcorn County v. U.S. Interstate Supplies,* 731 F.2d 1160, 1166 (5th Cir. 1984).

after detecting the scent of marihuana. Yet, the majority concludes that the search at the secondary inspection area, moments after the agent's unconstitutional intrusion, is sufficiently attenuated. The attenuation exception, however, requires greater temporal distance than seconds or minutes. Supreme Court decisions since *Wong Sun* have generally found that *hours* must elapse before evidence is purged of its taint. *Brown,* 422 U.S. at 604, 95 S.Ct. at 2262 (statement separated from illegal arrest by less than two hours not attenuated); *Dunaway,* 442 U.S. at 203, 218, 99 S.Ct. at 2251, 2259 (incriminating statements made within an hour of illegal arrest not sufficiently attenuated); *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) (confession six hours after illegal arrest not purged of taint of illegal arrest). Moreover, the time span here was even shorter than that in *Melendez–Gonzalez,* where the defendant's car was illegally searched, he was taken to the station and only then consented to a search. While there is no per se rule, I cannot join in the majority's conclusion that the search of Sheppard's vehicle, occurring moments after Agent Hillin's unconstitutional intrusion and at virtually the same location, was free of taint.

The majority also suggests that the "minor and technical" character of the Fourth Amendment violation at issue supports their view that the attenuation exception applies. *Brown* acknowledges that "the purpose and flagrancy of the official misconduct" is a relevant factor in attenuation analysis. 422 U.S. at 604, 95 S.Ct. at 2262. This is so because the exclusionary rule's primary function is deterrence. I do not quarrel with the majority's suggestion that the intrusion of Hillin's head into Sheppard's automobile was a minor violation of the Fourth Amendment. However, the intrusion by Agent Hillin into Sheppard's automobile was not an isolated incident. Indeed, it was Agent Hillin's "standard practice" to invade persons' Fourth Amendment protected space by placing his head in the interior of individuals' automobiles.[3] Agent Hillin's systematic fourth amendment violations heighten the need for deterrence, but the majority fails to take this reality into account.

In sum, the majority commits three errors when concluding that Sheppard's consent to search purged the taint of Agent Hillin's illegal intrusion. First, the majority breathes life into *Fike,* an opinion and analysis laid to rest by *Brown.* Second, the majority underestimates the weight of the Fourth Amendment violation at issue and the attendant need for the deterrent force of the exclusionary rule. Finally, and perhaps most significantly, the majority belittles the import of the time element to the attenuation issue. Sheppard consented to a search of his automobile only moments after, and at the same location as, the illegal intrusion by Agent Hillin. In light of the temporal (and spatial) proximity between the consent and illegal search, and considering all the factors relevant to the attenuation issue, I cannot say that the consent to search attenuated the seized evidence from its taint.

## II.

The majority's alternative holding, that the seizure was attenuated from the illegal search because Sheppard fled the scene, rests upon a per se approach rejected by *Brown* and improperly applies our attenuation jurisprudence. Under *Brown,* numerous factors are to be considered when assessing whether the taint of illegal police conduct is purged; including temporal proximity, intervening circumstances and

---

**3.** Agent Hillin's testimony at the suppression hearing revealed the frequency of his fourth amendment violations:

Q. What is the purpose of sticking your head in the window to determine citizenship, sir?

A. Establishing eye contact with who I am talking to. I like to look at who I am talking to and be looked at by that person.

Q. Would that help you to determine citizenship, by sticking your head in the window of an automobile?

A. Yes, sir.

Q. Do you do that to all automobiles?

A. Yes, sir.

the flagrancy of police misconduct. 422 U.S. at 603–04, 95 S.Ct. at 2261–62. "No single fact is dispositive." *Id.* at 603, 95 S.Ct. at 2261. Despite *Brown*'s teachings, the majority would adopt a per se rule that flight rids seized evidence of the taint of any prior unconstitutional police conduct— even where, as here, flight and the subsequent seizure of the evidence flowed directly from the initial intrusion.

In *Wong Sun* itself, the flight of James Wah Toy did not purge the taint of agents' illegal entry into his home. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The officers in *Wong Sun* were investigating a drug conspiracy. Pursuant to that investigation, the officers arrived at "Oye's Laundry" and were met at the door by Toy. Toy told the agents that the laundry was not open. In response, Agent Wong removed his badge and informed Toy that he was a narcotics agent. Toy immediately slammed the door and ran from the laundry to his living quarters. The officers broke open the door and tracked down Toy. Toy was then arrested and subsequently made incriminating statements. Later that day, in response to disclosures by Toy, the officers went to the house of Johnny Yee and seized a small amount of heroin.

The Court determined that even though Toy fled from the agents, there was neither reasonable grounds nor probable cause for Toy's arrest. 371 U.S. at 479–84, 83 S.Ct. at 412–15. The Court then turned to whether Toy's declarations were fruits of the agents' unlawful actions. The Court determined that "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* at 485, 83 S.Ct. at 416. In finding that Toy's statements were tainted, the Court specifically rejected the Government's contention that Toy's disclosures were purged of their taint because of an "intervening independent act of free

will." The Court concluded that under the circumstances, where Toy was "almost immediately handcuffed and arrested," it was "unreasonable to infer that Toy's response was sufficiently an act of free will to purge the taint of the unlawful invasion." *Id.* at 486, 83 S.Ct. at 416. The Court also held that the subsequent seizure of heroin, later in the day and at a different location, was also tainted by the agents' illegal entry because "the narcotics were 'come at by the exploitation of that illegality.'" *Id.* at 487–88, 83 S.Ct. at 417–18.

Similarly, Sheppard's flight was a direct result of, and flowed from, Agent Hillin's illegal intrusion. Agent Hillin stopped Sheppard and discovered, based upon an unconstitutional intrusion, that Sheppard might possess narcotics. The agent then directed Sheppard to the secondary inspection area, and obtained his consent to search the trunk of Sheppard's automobile. Within moments of the initial illegal search, Sheppard and Tobin broke away from the agents and fled in Sheppard's car—only to be captured and have the drugs seized. Like Toy in *Wong Sun*, Sheppard's flight within a few moments of the initial illegal intrusion was a product of the agent's fourth amendment violation.[4]

The majority cites *United States v. Nooks,* 446 F.2d 1283 (5th Cir.), *cert. denied,* 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971), for the proposition that flight necessarily attenuates a prior unconstitutional search. "Much, however, intervened between [the earlier event] and the [subsequent] search of the automobile" in *Nooks. Id.* at 1287. In the time frame between the two searches, the Sheriff obtained independent evidence of the suspects' identification over the car radio, the suspects fired shots at the Sheriff, and it became necessary to open the trunk of the vehicle to rescue two persons trapped inside. *Id.* at 1287–88; *see also United States v. Cherry,* 794 F.2d 201, 206 (5th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987) (Cherry III) (noting that *Nooks* in-

---

**4.** Moreover, in *Wong Sun,* the subsequent seizure of narcotics, later in the day at the home of Yee, was even more attenuated than the state-

ments of Toy. Yet, the Court concluded that narcotics were not "purged of the primary taint." *Id.* 371 U.S. at 488, 83 S.Ct. at 417.

volved the "development of independently procured probable cause following an illegal arrest").[5]

Unlike *Nooks*, the agents in the instant case (like those in *Wong Sun*) had no independent and untainted evidence upon which to conduct a search. We have held that where probable cause for a subsequent search or arrest is itself based upon tainted evidence, the attenuation exception is not satisfied:

> The acquiring of probable cause by the police ... neither logically breaks the causal chain ... nor in view of the purposes of the exclusionary rule necessarily attenuates that relation to the point that the evidence need not be excluded. As we have seen, the theory underlying the fruit of the poisonous tree doctrine is that, when there is a close causal connection between the prior police misconduct and the availability of challenged evidence, the evidence should be suppressed since the deterrent value of exclusion outweighs the competing interest in having all probative evidence put before the factfinder.... The intervening discovery of probable cause to support a suspect's detention, by itself, 'cannot assure in every case that the Fourth Amendment violation has not been unduly exploited.'

*United States v. Cherry*, 759 F.2d 1196, 1211–12 (5th Cir.1985) (Cherry II) (*citing Brown*, 422 U.S. at 603, 95 S.Ct. at 2261); *United States v. Walker*, 535 F.2d 896, 899 (5th Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976) ("[W]e do not here hold that an illegal arrest can always be cured by a subsequent arrest based upon probable cause."). Here, there is a very tight nexus between the seizure of the narcotics and Agent Hillin's unconstitutional search. Indeed, Sheppard's

flight flowed directly from Agent Hillin's search, and there was no untainted evidence upon which to base the subsequent search and seizure. Therefore, I would conclude that the seizure was not sufficiently attenuated.[6]

Under *Wong Sun*, *Brown* and their progeny, the seizure of narcotics from Sheppard's vehicle was not sufficiently attenuated from Agent Hillin's illegal search. Both intervening circumstances, the consent to search and flight, occurred within moments of the unconstitutional intrusion. Moreover, under all the facts and circumstances, the seizure was a product of Agent Hillin's search. Thus, I respectfully dissent.

---

**5.** Similarly, in *United States v. Garcia*, 516 F.2d 318, 320 (9th Cir.), *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975), the flight, "[t]ogether with the other untainted evidence known to the officer," provided sufficient attenuation.

**6.** The remaining cases cited by the majority are easily distinguishable. *United States v. Walker*, 535 F.2d 896 (5th Cir.1976) and *United States v. Garcia–Jordan*, 860 F.2d 159 (5th Cir.1988), are

not even cases involving flight. *United States v. Bailey*, 691 F.2d 1009, 1019 n. 12 (11th Cir.1982), *cert. denied*, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983), specifically limits its holding to cases where the defendant's subsequent conduct constitutes a violation of 18 U.S.C. § 111. Here, unlike *Bailey*, the Government does not contend that Sheppard forcibly resisted arrest in violation of 18 U.S.C. § 111.